UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL CASUALTY CO. ,

       Plaintiff,

v.

AMERICAN BANKERS INSURANCE CO.
OF FLORIDA, ET AL.,

       Defendants.

_____/

Case No. 05-71843

Honorable Nancy G. Edmunds

**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS PETITION FOR APPOINTMENT OF AN UMPIRE**

This matter came before the Court on Respondents' motion to dismiss the petition for judicial appointment of an umpire to guide arbitration between the parties.  For the reasons discussed below, the Court GRANTS Respondents' motion to dismiss the Petition.

**I.    Facts**

In May of 1974 and again in April of 1975, Petitioner, National Casualty Company, entered into retrocession agreements with Respondents.  The agreements, which covered the calendar years 1974 and 1975 respectively, governed Respondents' reinsurance of Petitioner.  The retrocession agreements contain nearly identical arbitration provisions, differing in only two respects: The seat of the Board of Arbitration, and the court in which a petition for appointment of an umpire should be filed.  The relevant provisions are as follows, with emphasis added to the differing portions:

Article XIII – Arbitration

Any dispute or difference hereafter arising with reference to the interpretation, application or effect of this agreement or any part thereof . . . shall be referred to a Board of Arbitration consisting of two (2) Arbitrators and an Umpire . . . . The seat of the Board of Arbitration shall be in *[1974 Agreement: Detroit, Michigan; 1975 Agreement: Southfield, Michigan]*, unless the disputants agree otherwise.

One (1) Arbitrator shall be chosen by [National Casualty] and the other by [Respondents]. The Umpire shall be chosen by the two (2) Arbitrators.

. . .

In the event the two (2) Arbitrators do not agree within Thirty (30) days on the selection of an Umpire, [National Casualty] shall be required to petition the Circuit Court of *[1974 Agreement: Wayne County, Michigan; 1975 Agreement: Oakland County, Michigan]* to appoint an umpire.

. . .

Pet. Ex. 1 & 2.

A dispute has arisen under the two retrocession agreements. On December 31, 2004, Petitioner demanded arbitration and appointed an arbitrator in accordance with the above-cited agreements. In the weeks that followed, Respondents also appointed an arbitrator. The two arbitrators have negotiated the appointment of an umpire from a list of candidates provided by the parties, but to no avail. The thirty-day limit for selection of an umpire has lapsed. On May 10, 2005, Petitioner asked this Court to appoint an umpire. **II.   ANALYSIS**

**A.  Court Appointment of an Umpire**

Both parties rely on the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-16, in support of their respective arguments. Respondents cite Section 5's provision that "[i]f in the agreement, provision be made for a method of naming or appointing an arbitrator or

arbitrators or an umpire, *such method shall be followed . . . .*"  Resp'ts''s Mem. in supp. of

Mot. to Dismiss 6 (quoting 9 U.S.C. § 5) (emphasis provided by Respondents).

Petitioner cites Section 5 in its entirety, which goes on to state,

> but if no method be provided therein, or if a method be provided and any
> party thereto shall fail to avail himself of such method, or if for any other
> reason there shall be a lapse in the naming of an arbitrator or arbitrators or
> umpire, or in the filling of a vacancy, then upon application of either party to
> the controversy the court shall designate and appoint an arbitrator or
> arbitrators or umpire, as the case may require, who shall act under the said
> agreement with the same force and effect as if he or they had been
> specifically named therein . . . .

Pet'r's Mem. in Opp'n to Resp'ts' Mot. to Dismiss 6 (quoting 9 U.S.C. § 5).

Petitioner cites *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*,

814 F.2d 1324 (9th Cir. 1987), as authority for this Court's power to appoint an umpire

under the FAA.  That case involved twelve contracts containing arbitration clauses.  Only

seven of the contracts, however, contained provisions for the naming of an umpire.  The

remaining five contracts were silent on the issue.  *Id.* at 1325-26.  Petitioner describes the

case as follows:

> When it came time to select an umpire, each party-appointed arbitrator
> named two umpire candidates, but the party-appointed arbitrators could not
> agree on which one of the four to select.  Ohio's arbitrator insisted that the
> deadlock be broken by using the lot-drawing method described in seven of
> the twelve contracts.  Pacific's arbitrator, however, refused to use the lot-
> drawing method.  This impasse lasted five months before the matter was
> brought to the district court.  The district court, pursuant to Section 5, then
> selected an umpire.

Pet'r's Mem. in Opp'n to Resp'ts' Mot. to Dismiss 7 (internal citations omitted).  Petitioner

goes on to describe how the Ninth Circuit affirmed the district court's order.  *Id.* at 7-8.

Curiously, however, Petitioner omits an important fact, which was essential to the Ninth

Circuit's holding:

3

The first order of the district court ordered that arbitration take place in accordance with the parties' agreement.  The parties then attempted to appoint their umpire as required by the contracts, but were unable to do so. *After* five months of impasse, the appellees finally approached the district court for an order appointing the umpire.

*Pacific Reassurance*, 814 F.2d at 1329 (emphasis added).  Thus, the impasse did not "last[] five months before the matter was brought to the district court," as Petitioner contends.  Rather, the district court first ordered compliance with the parties' arbitration agreements, and then, after five months of stagnation, the matter was brought *back* to the district court.  Only then did court appointment of an umpire become appropriate.  As the court recognized, while the purpose of Section 5 is facilitating arbitration, it "still respects the agreement of the parties, by requiring compliance with those agreements when possible." *Id.*

Thus, under Section 5, a district court should first order compliance with the parties' express agreement.  Only upon an impasse may a court then appoint an umpire.  Such a reading comports with the Supreme Court's finding that "[p]assage of the [FAA] was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered. *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 220 (1985).  Though it may lead to an inefficient result, this Court must abide by the terms of the parties' retrocession agreements. *Id.*

### B.  Consolidation of Arbitrations

Petitioner argues that "[i]t is not possible for National Casualty to petition both the Circuit Court for Wayne County, Michigan and the Circuit Court for Oakland County, Michigan to select one umpire for the one arbitration." Pet. 9.  Petitioner is entirely correct.

4

But Petitioner fails to provide any sound reason why there must only be "the one arbitration." *Id.*

Petitioner contends that the two retrocession agreements "envision" a single, combined arbitration. Pet'r's Mem. in Opp'n to Resp'ts' Mot. to Dismiss 9. This assertion borders on the absurd. The parties were free to contract into a consolidated arbitration, but they did not. Rather, just as Petitioner points out, a combined arbitration "is not possible" under the written terms of the retrocession agreements. Pet. 9.

The Sixth Circuit has held that "a district court is without power to consolidate arbitration proceedings, over the objection of a party to the arbitration agreement, when the agreement is silent regarding consolidation." *Am. Centennial Ins. Co. v. Nat'l Cas. Co.*, 951 F.2d 107, 108 (6th Cir. 1991). Indeed, Petitioner "does not dispute the relatively unbroken chain of authority spanning back over twenty years which holds that consolidation cannot be compelled in the absence of the parties' consent." Pet'r's Mem. in Opp'n to Resp'ts' Mot. to Dismiss 9-10 (citing *Philadelphia Reinsurance Corp. v. Employers Ins. at Wausau*, No. 02-1943, 2003 U.S. App. LEXIS 6198 (3d Cir. Mar. 31, 2003); *United Kingdom v. Boeing Co.*, 998 F.2d 68 (2d Cir. 1993); *Am. Centennial Ins. Co.*, 951 F.2d 107; *Baesler v. Continental Grain Co.*, 900 F.2d 1193 (8th Cir. 1990); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281 (11th Cir. 1989); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145 (5th Cir. 1987); *Weyerhauser Co. v. W. Seas Shipping Co.*, 743 F.2d 635 (9th Cir. 1983), *cert. denied*, 469 U.S. 1061 (1984)).

Petitioner asserts that Respondents have consented to a single arbitration, by failing to object and by conducting themselves as if there was a single arbitration. Only two exhibits speak to this issue. In a letter dated January 6, 2005, counsel for National

American Insurance Company of California ("NAICC"), one of the Respondents in this case, stated that "NAICC will not agree to proceed in a consolidated arbitration."  Pet. Ex. 4.  On its face, this appears to be an express objection to a consolidated arbitration, and not surprisingly, that is exactly how Respondents describe it.  But taken in context, the statement is more ambiguous: "[I]t is not clear whether your letter purports to demand a consolidated arbitration or a separate, individual arbitration *against NAICC*.  For the sake of clarity, unless compelled by contract or law to proceed on a consolidated basis, NAICC will not agree to proceed in a consolidated arbitration."  *Id.* (emphasis added).  It appears, therefore, that NAICC was objecting to an arbitration consolidating all of the *Respondents*, rather than an arbitration consolidating the two retrocession agreements.[1]

Respondents also rely on a letter dated January 27, in which they appointed an arbitrator.  That letter states, "Nothing contained herein should be deemed a waiver of any rights that the Reinsurers have in this matter."  Pet. Ex. 7.  Boilerplate language such as this does little to support Respondents' position, especially considering that the subject line of the same letter states, "Re: In the Matter of *the Arbitration* . . . ."  *Id.* (emphasis added).[2]

To be sure, the evidence is inconclusive on the matter, but if they mean anything at all, the above-cited exhibits support Respondents' argument, not Petitioner's.  Furthermore, it appears possible that Respondents envisioned a single Arbitration Board, made up of the same three members, to handle the two arbitrations separately.[3]  Aside from the silly result

---

[1]NAICC later joined the other Respondents in naming a single arbitrator.  Pet. Ex. 8.

[2]Respondents now typically refer to "the arbitrations" in plural form.  Resp'ts' Mem. in supp. of Mot. to Dismiss 4.

[3]Respondents have not argued this point.

6

that the board's seat might be in Detroit for one arbitration and in Southfield for the other (which could be modified by agreement), this seems to be an entirely plausible scenario.

Petitioner cites a Seventh Circuit case, *Connecticut General Life Insurance Co. v. Sun Life Insurance Co. of Canada*, 210 F.3d 771 (7th Cir. 2000), for the proposition that the Court should apply a "more likely than not" standard in determining whether Respondents consented to consolidated arbitration.  Petitioner has presented no evidence to support such a finding, and based on the exhibits now before the Court, Petitioner has failed to meet this burden.

Finally, whatever may be said of Respondents' understanding of the situation, or of their purported failure to object to consolidated arbitration, Respondents have certainly not consented to consolidation under the circumstances as they now exist.  Even assuming that Respondents had consented, their consent was predicated on the understanding that the umpire would be chosen by the parties' arbitrators, from a list provided by the parties themselves.  That process broke down.  Now, rather than a mutually agreed-upon umpire, the arbitration will take place under a court-appointed umpire (or umpires).[4]  Respondents only ask that the court appointment of an umpire (or umpires) follows the procedure set out in the retrocession agreements.[5]

---

[4]Petitioner "submits that the most efficient way for [this] Court to proceed is to designate and appoint the umpire from among the six candidates exchanged by the party-appointed arbitrators . . . .  Alternatively, the Court could designate and appoint a nominee of its choosing . . . ."  Pet. 9.

[5]Respondents assert that the retrocession agreements' requirements regarding judicial appointment an umpire are equivalent to forum selection clauses.   Resp'ts' Reply Mem. in supp. of Mot. to Dismiss 2.  As Respondents point out, such clauses are routinely

**III.   Conclusion**

For the reasons set forth above, the Court hereby GRANTS Respondents' motion to

dismiss the petition, so that the parties may pursue arbitration according to the terms of

their contract.

<div style="margin-left: 40%;">

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

</div>

Dated:  September 20, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on September 20, 2005, by electronic and/or ordinary mail.

<div style="margin-left: 40%;">

s/Carol A. Hemeyer
Case Manager

</div>

---

enforced by the courts, as long as they are reasonable and were freely negotiated.  *See*,
*e.g.*, *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).